**Slip Op. 05-17**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

CANDLE ARTISANS, INC.,

                Plaintiff,

      vs.

UNITED STATES INTERNATIONAL
TRADE COMMISSION, DEANNA TANNER
OKUN, Chairman,

      and

UNITED STATES BUREAU OF CUSTOMS
AND BORDER PROTECTION, ROBERT C.
BONNER, Commissioner,

                Defendants.

BEFORE: Pogue, Judge

Court No. 03-00538

[Plaintiffs' motion for judgment on the agency record denied; judgment entered for Defendants.]

Decided: February 7, 2005

Morgan Lewis & Bockius LLP (Mark N. Bravin, Yiota G. Souras) for Plaintiff Candle Artisans, Inc.

James M. Lyons, Acting General Counsel, Rhonda M. Hughes, Acting Assistant General Counsel, Neal J. Reynolds, Attorney, Office of the General Counsel, U.S. International Trade Commission, for Defendant U.S. International Trade Commission.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidsdon, Deputy Director, David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Charles Steuart, Attorney, Office of the Chief Counsel, United States Bureau of Customs and Border Protection, Of Counsel, for Defendant U.S. Bureau of Customs and Border Protection.

**OPINION**

**POGUE, Judge:** In this action, Plaintiff alleges that Defendants unlawfully deprived it of its share of 2001 and 2002 distributions under the Continued Dumping and Subsidy Offset Act of 2000. 19 U.S.C. § 1675c (2000)("Byrd Amendment" or "the Act"). Specifically, Plaintiff claims that Defendants (1) unlawfully interpreted the provisions of the Byrd Amendment and the Tariff Act so as to cause only those affected domestic producers who had waived confidentiality to appear on the list provided by the ITC to Customs and (2) failed to provide adequate notice of their interpretation of the two laws.

This matter is before the Court on Plaintiff's motion for judgment upon the agency record. The Court has jurisdiction under 28 U.S.C. § 1581(i). The Court denies Plaintiff's motion and grants judgment for Defendants.

**BACKGROUND**

The Plaintiff's action stems, in part, from a September 4, 1985 antidumping petition filed by the National Candle Association, alleging material injury or threat of material injury to a domestic industry from imports of petroleum wax candles from China.[1] Petroleum Wax Candles From the People's Republic of China, 50 Fed.

---

[1]The Court notes that the facts of this case are similar to those in Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 27 CIT __, 285 F. Supp. 2d 1371 (2003). Familiarity with the Court's opinion in that proceeding is presumed.

Reg. 39,743 (Dep't. Commerce Sept. 30, 1985) (initiation of antidumping duty investigation). Plaintiff participated in the ITC's investigation to the extent that it responded to an ITC questionnaire, and indicated its support for the National Candle Association's petition. See Candle Artisans' Producer's Questionnaire, P.R. Doc. No. 2 at 1, 5 (May 28, 1986). After concluding its investigation, the Department of Commerce published an antidumping order covering the Chinese imports. Petroleum Wax Candles from the People's Republic of China, 51 Fed. Reg. 30,686, 30,686-87 (Dep't Commerce Aug. 28, 1986) (antidumping duty order).

Fourteen years later, Congress passed the Byrd Amendment. The Byrd Amendment directs that funds collected pursuant to antidumping and countervailing duty orders be annually distributed to "affected domestic producers" ("ADPs"). 19 U.S.C. § 1675c(a). The Byrd Amendment defines an "affected domestic producer" as any party who was a petitioner or supporter of an antidumping or countervailing duty petition, and who remains in operation. 19 U.S.C. § 1675c(b)(1).

Under the Byrd Amendment, Defendant International Trade Commission ("ITC") is directed to forward to Defendant United States Bureau of Customs and Border Protection ("Customs") a list of ADPs ("the eligibility list"). 19 U.S.C. § 1675c(b), (d). Customs, in turn, is directed to publish the eligibility list in the Federal Register at least thirty days before it distributes any of the collected duties, so that ADPs may file certifications of

their eligibility, and submit a claim to receive a portion of the collected duties.   19 U.S.C. § 1675c(d)(2).   The Act also authorizes Customs to promulgate, by regulation, procedures to be followed in distributing collected duties. 19 U.S.C. § 1675c(c).

Pursuant to the Byrd Amendment, on December 29, 2000, Defendant ITC transmitted to Defendant Customs a list of affected domestic producers for all antidumping and countervailing duty orders then in effect, including the 1986 order covering petroleum wax candles from China.  In the letter accompanying the list ("the explanatory letter"), Defendant ITC explained that it believed provisions of the Byrd Amendment were in conflict with § 777[(b)(1)(A)] of the Tariff Act of 1930. See Letter from Stephen Koplan, Chairman, ITC, to the Hon. Raymond Kelly, Comm'r of Customs, P.R. Doc. No. 4 at 1 (Dec. 29, 2000).   Section 777(b)(1)(A) deals with the confidentiality of certain information provided to the ITC, including any information designated as proprietary by the party providing the information.  19 U.S.C. § 1677f(b)(1)(A).   ITC maintains that its practice is to regard indications of support for a petition as confidential information.  See Stipulations Agreed to By the ITC and Candle Artisans, Inc. ("Stipulations"), Attach. 1 to Pl.'s Mot. J. Agency Rec. ("Pl.'s Mot.") at paras. 4 & 5; see also 19 C.F.R. § 201.6(a)(1).[2]

---

[2]The ITC argues that this regulation, which defines "business confidential information," is broad enough to encompass indications of petition support. See infra note 6.

Moreover, the words "Business Confidential" appeared at the top of the pages of the questionnaire used in evaluating the petroleum wax candle petition. See Stipulations, Attach. 1 to Pl.'s Mot. at paras. 4 & 5., Producer's Questionnaire (Blank), P.R. Doc. No. 1 at 2-38.

Having explained its belief that there was a conflict between the Byrd Amendment and the Tariff Act (and accompanying ITC regulations regarding confidentiality), Defendant ITC placed on the eligibility list only the names of those ADPs who had affirmatively waived the confidentiality of their questionnaire responses. See Stipulations, Attach. 1 to Pl.'s Mot. at para. 3. Defendant ITC published the list as provided to Customs on its website by early 2001, along with the explanatory letter. See Stipulations, Attach. 1 to Pl.'s Mot. at para. 8. In June 2001, Customs published a notice of the receipt of the list and its online publication. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 33,920, 33,920-21 (Dep't Treasury June 26, 2001) (proposed rule). The June 26, 2001 notice also stated that the list would be updated as necessary, and asked that any issues regarding the list be brought to ITC's attention. Id.

In August 2001, Customs published, in accordance with the Byrd Amendment, a notice of proposed distribution in the Federal Register. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 40,782 (Dep't Treasury Aug. 3, 2001) (notice of intent to distribute offset). This notice

contained an updated list of ADPs, id. at 40,785-99, but was not accompanied by any explanation of the effects of the Tariff Act or the ITC's confidentiality regulation. Id. at 40,782-83. The notice also stated that certifications for ADPs claiming distributions under the Byrd Amendment had to be filed by a certain date (either October 2, 2001, or within ten days of the publication of a Final Rule regarding distributions).[3] Id. at 40,783.

Plaintiff's name did not appear on the eligibility list at any time during 2001. Plaintiff did not file for certification for that year. On July 3, 2002, Customs published a new notice of intent to distribute collected duties, accompanied by the list of ADPs.[4] Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 67 Fed. Reg. 44,722, 44,724-41 (Dep't Treasury July 3, 2002) (notice of intent to distribute offset for fiscal year 2002). This notice required that certifications of

---

[3]The final rule regarding distributions was published in the Federal Register on September 21, 2001. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 48,546, 48,553 (Dep't Treasury, Sept. 21, 2001) (final rule). The rule requires that certifications be filed within sixty days of the publication of notice of intent to distribute in the Federal Register. 19 C.F.R. § 159.63(a)(2002). This deadline for certification filing ensures that Customs meets its own statutory deadline for calculating and distributing claimants' shares of collected duties. 19 U.S.C. § 1675c(c).

[4]The Court notes that the list of ADPs was not static. According to Customs, the eligibility list was continuously updated from the time it appeared on Customs' website as ADPs that had initially not been listed demonstrated their eligibility for certification. Def. Customs' Opp'n to Pl.'s Mot. J. Agency R. at 15-16.

eligibility to receive distributions be filed by September 3, 2002.

Id. at 44,722.  Plaintiff's name did not appear on the list of affected domestic producers published with the July 3, 2002 Federal Register notice.  See id. at 44,725.

In March, 2003, Plaintiff became aware of a competitor's press release, in which the competitor announced its forthcoming receipt of a Byrd Amendment distribution.  Pl.'s Mot. at 6.  Plaintiff then wrote to Defendants, informing them that it felt it had been wrongfully excluded from the lists for 2001 and 2002, and requesting its share of distributions for those years.  Id. Defendants responded that they could not provide relief for 2001 or 2002, but that Plaintiff's name would appear on forthcoming eligibility lists.  See id. at 7.  In the instant claim, Plaintiffs ask the Court to direct that Customs distribute to them their share of duties for both 2001 and 2002.


## STANDARD OF REVIEW

Where the Court takes jurisdiction pursuant to 28 U.S.C. § 1581(i), it will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see 28 U.S.C. § 2640(e).

## DISCUSSION

In <u>Cathedral Candle Co. v. U.S. Int'l Trade Comm'n</u>, 27 CIT __, 285 F. Supp. 2d 1371 (2003), the Court held that plaintiffs' failure to timely file applications for distribution of Byrd Amendment moneys could not be excused because there was adequate notice of the filing deadlines. <u>Id.</u> at __, 1375-76. Plaintiffs in that case alleged that the failure to timely file should be excused, as ITC's confidentiality statute and regulation had been abrogated by the passage of the Byrd Amendment. <u>Id.</u> at __, 1377. Plaintiffs also argued that the ITC's failure to give notice of its interpretation of the confidentiality statute and regulation to cover petition support was a violation of the Administrative Procedure Act. <u>Id.</u> at __, 1378.

Plaintiff's case here mainly reiterates the claims described above. However, Plaintiff argues a point that was never directly raised in that case, and which should be addressed. Specifically, Plaintiff questions whether the ITC could enforce its interpretation of 19 U.S.C. § 1677f(b)(1)(A)[5]  and 19 C.F.R. §

---

[5]19 U.S.C. § 1677f(b)(1)(A) states:

(A) <u>In general</u>
  Except as provided in subsection (a)(4)(A)of this section and subsection (c)of this section, information submitted to the administering authority or the Commission which is designated as proprietary by the person submitting the information shall not be disclosed to any person without the consent of the person submitting the information, other than—
   (i) to an officer or employee of the administering authority or the Commission who is directly concerned

201.6(a)(1)[6] (that support for petitions ought be maintained as confidential) without having any regulation directly stating this interpretation.  In essence, in addition to arguing that ITC and Customs should have provided more direct notice of the "harmonization" of the Byrd Amendment[7] and 19 U.S.C. §

_____

with carrying out the investigation in connection with which the information is submitted or any review under this subtitle covering the same subject merchandise, or
    (ii) to an officer or employee of the United States Customs Service who is directly involved in conducting an investigation regarding fraud under this subtitle.


[6]19 C.F.R. § 201.6(a)(1) provides, in part:

    (a) Definitions. (1) Confidential business information is information which concerns or relates to . . . other information of commercial value, the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. [§] 1677f(b)).


[7]Plaintiff appears to make the argument, made also in Cathedral Candle Co., that no harmonization of the Byrd Amendment is possible, because the Byrd Amendment trumps the confidentiality provisions of 19 U.S.C. § 1677f(b)(1)(A) and 19 C.F.R. 201.6(a)(1).  In support of this claim, at oral argument, Plaintiff referred to the Court's statement in Cathedral Candle Co. that "[t]he Byrd Amendment directs the ITC to prepare a list of all petitioners and petition supporters still in business." See Cathedral Candle Co., 27 CIT at __, 285 F. Supp. 2d at 1376. Plaintiff makes too much of the Court's phrasing, especially as

1677f(b)(1)(A), as was argued in <u>Cathedral Candle Co.</u>, Plaintiff

here also argues that the ITC should have provided notice of its

interpretation of 19 U.S.C. § 1677f(b)(1)(A) and 19 C.F.R. §

201.6(a)(1) to cover support for petitions.

As the Court stated in <u>Cathedral Candle Co.</u>:

> Neither the statute nor the regulation explicitly require
> that the identity of petition supporters or the fact of
> their support be maintained as confidential information.
> However, the questionnaires distributed in the candle
> antidumping investigation were labeled "Business
> Confidential," thereby putting respondents on notice that
> their answers were not to be made publicly available, and
> bringing the provisions of 19 U.S.C. § 1677f(b)(1)(A)
> into play. The ITC's regulation does not require notice.
> Moreover, the ITC interprets its regulation to permit the
> agency to maintain information in confidence, where its
> release could either hurt the [ITC]'s ability to obtain
> information in future investigations or harm the business
> competitiveness of questionnaire respondents.

<u>Cathedral Candle Co. v. U.S. Int'l Trade Comm'n</u>, 27 CIT at __, 285

F. Supp. 2d at 1376-77 (2003) (internal citations omitted).

---

the Court in that case went on to find that the Byrd Amendment
is, in fact, ambiguous on the topic of whether the ITC's
confidentiality statutes and regulations apply. <u>Id.</u> at __, 1377.
While Plaintiff further appears to argue that even to the extent
it was ambiguous, the statute clearly reserves to Customs the
right to interpret it, <u>see</u> Pl.'s Reply Defs.' Resps. Pl.'s Mot.
J. Agency R. at 7. Plaintiff has not resolved the question of
how Customs, whatever its own interpretation, is supposed to
force the ITC to reveal information it has long held to be
confidential. Plaintiff claims that 19 C.F.R. § 201.6(g), which
requires that any information received in confidence by the ITC
be maintained in confidence unless its disclosure is required by
law, furnishes the answer to this question, forcing the ITC's
disclosure as required by law. <u>See</u> Pl.'s Mot. at 13. The
ambiguity of the Byrd Amendment, however, precludes such an
approach. Rather, as this Court concluded in <u>Cathedral Candle
Co.</u>, it is for the agencies to reconcile the competing statutory
requirements.

Plaintiff argues that the ITC acted outside the bounds of law by interpreting 19 U.S.C. § 1677(f)(b)(1)(A) and 19 C.F.R. § 201.6(a)(1) to hold petition support confidential without any formal notice or regulation making clear that particular interpretation.

Plaintiff's argument fails for the identical reason that the notice argument failed in Cathedral Candle Co. The ITC's interpretation of 19 U.S.C. § 1677f(b)(1)(A) and 19 C.F.R. § 201.6(a)(1) to preclude the ITC's revelation of petition support was, if a rule at all, an interpretative rule which merely clarified the agency's position regarding the meaning of a statute or its own regulations. At least one court addressing this issue has held that publication of an interpretive rule is only required where that interpretive rule reflects a change in policy. Knutzen v. Ebenezer Lutheran Hous. Ctr., 815 F.2d 1343, 1351 (10th Cir. 1987). Here, ITC's confidential treatment of support for petitions does not appear to represent a change in policy: it merely is the application of an old policy in a new situation. Moreover, as the Court held in Cathedral Candle Co., "even if the publication of all interpretive rules is required under the Freedom of Information Act, 5 U.S.C. § 552, it is not clear that it was necessary for Plaintiff[] here to be apprised of the particular interpretation adopted by the Defendants in order to act to protect [its] rights under the Byrd Amendment." Cathedral Candle Co., 27 CIT at __, 285 F. Supp. 2d at 1379 & n.12.

As in Cathedral Candle Co., Plaintiff here presumably had all

the information necessary to understand its rights under the Byrd Amendment. Plaintiff presumably knew that it had supported an antidumping petition and that the Byrd Amendment directed distributions to those who had done so. Had it been concerned at all with receiving such distributions, Plaintiff was in no way precluded from contacting Customs or the ITC. In fact, had Plaintiff been protecting its own interests, and diligently following the publications in the Federal Register, its first course of action upon finding its name not listed would have been to contact Customs or the ITC.[8]

---

[8]While it is generally accepted that publication in the Federal Register constitutes notice to all persons within the United States of the notice's contents, Plaintiff argues that the Court should not "impute knowledge of the labyrinthine passages of the Federal Register when there is evidence to the contrary," citing Sundstrom v. United States, 419 U.S. 934, 937 (1974). See Pl.'s Mot. at 19. However, the passage to which Plaintiff cites is from Justice Douglas' dissent from denial of certiorari in the case, and as such can offer the Plaintiff no substantial support. Moreover, most of the other cases which Plaintiff offers for the proposition that Federal Register notice is constitutionally inadequate where property rights are at issue involved vested property rights rightfully implicating the Takings Clause, not eligibility to apply for a prospective benefit. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) (involving tax sale of real property); cf. The Covelo Indian Community v. FERC, 895 F. 2d 581, 587-88 (9th Cir. 1990) (actual notice not required where injury is purely speculative). Here, the damage to the claimed property interest is purely speculative if only because, even had Plaintiff properly been listed as an ADP by Defendants, it would still have had to apply for the benefits. Whether or not it applied would be the final measure of whether it actually was owed any benefits, and until such application, the property right in the distribution, and any injury thereto, would have remained speculative. This makes the case under consideration fundamentally different from Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). In that case, Plaintiff's already had a vested right in a common trust fund. Id. at 307.

Plaintiff also appears to argue that even had there been notice of the ITC's interpretation of its regulation to cover petition support, that interpretation would not have been "in accordance with law." Plaintiff argues that because the Court in Cathedral Candle Co. stated that nothing in the governing statutes or regulations explicitly mandates that the fact of support must be kept confidential, such support does not in fact constitute business confidential information, and must be segregated by the ITC and publicly released. See Pl.'s Mot. at 14, 16. This goes too far: the mere fact that the statute and regulation do not explicitly require confidentiality of support does not mean that such confidentiality is not called for. Indeed, the regulation requires that any information of commercial value, the disclosure of which might impede the ITC's ability to gather information in the future or which might hurt a respondent's competitive position,

---

The case centered around the possible altering of their ownership (and benefits) out of the common trust stemming from a petition for a binding judicial settlement of accounts. Id. at 309. The Court held that plaintiffs were unable to respond to this proposed settlement because of inadequate notice, and therefore, their already vested property rights in the trust holdings were jeopardized. Id. at 316-17. In the case at bar, however, Plaintiff has no vested right in the Byrd Amendment distribution. It is only, at best, eligible to apply for the benefits. Under the holding in Lyng v. Payne, wherein farmers who were eligible to apply for disaster relief funds sued on due process grounds under the belief that publication of the eligiblity rules in the Federal Register was deficient, where a benefit is contingent on application, and is not already vested or being received, there is no inherent due process right. Lyng v. Payne, 476 U.S. 926, 942 (1983). Moreover, publication in the Federal Register is "more than ample." Id.

not be disclosed.  <u>See</u> 19 C.F.R. § 201.6(a)(1).

Thus, there are two criteria for determining whether information may not be released. First, the data must be "of commercial value." <u>Id.</u>  It seems obvious to the Court, for the reasons enunciated below, that the fact of petition support is of commercial value.  Like customer lists or prices, support for a petition is not information that would be considered uninteresting or meaningless by competitors, customers, or suppliers. Its value, like that of customer lists or prices, is strategic: knowing whether a given company had supported or failed to support a petition could influence other companies' behavior, as regards the petition itself, as regards the company whose position is revealed, or as regards the market as a whole.  Second, revelation of support (or lack of support) for a petition must be likely to be detrimental to the ITC's mission or to a respondent's competitive position.  <u>Id.</u>; <u>see also</u> Def. ITC's Resp. Pl.'s Mot. J. Agency R. at 17.  Antidumping duty petitions are often subject to dispute, and support for the petition, or lack thereof, is a factor in the ITC's analysis.  <u>See</u> <u>Suramerica de Aleaciones Laminadas, C.A. v. U.S.</u>, 44 F.3d 978, 984 (Fed. Cir. 1994).  The ITC's failure to treat indications of support or opposition as confidential may affect its ability to obtain this information.  Moreover, public knowledge as to support or lack thereof may result in compromised relationships with competitors and with downstream customers. Thus, it is not an unreasonable reading of the regulation for ITC

to hold the disclosure of support as likely to interfere with the agency's ability to gather information.

Accordingly, because indications of petition support (or the lack thereof) are of commercial value, and because revelation of such data could harm either the respondent or the ITC, it is not an unreasonable reading of the regulation for ITC to hold support as "business confidential information."

Plaintiff also argues that it should not be held accountable for the ITC's self-designation of questionnaire information as confidential ("Business Confidential" was written at the top of each page of the questionnaire, other than the cover page, and the instructions to the Questionnaire warned respondents that responses were subject to the provisions of 19 U.S.C. § 1677f). See Pl.'s Mot. at 16; see also Producer's Questionnaire (Blank), P.R. Doc. No. 1. In supporting this argument, Plaintiff claims that the ITC's treatment of petition support as confidential is undermined by the fact that the ITC (a) publicly identified Plaintiff's status as a respondent and (b) "strongly alluded to" Plaintiff's support in public documents. See Pl.'s Mot. at 14. First, there is no indication that the mere identity of Plaintiff as the respondent to a questionnaire implicates any of the concerns of either 19 U.S.C. § 1677f or 19 C.F.R. § 201.6(a)(1). The first page of the questionnaire, upon which the name and address of the recipient is written, was not labeled "Business Confidential" by the ITC. See Producer's Questionnaire (Blank), P.R. Doc. No. 1 at 1. Candle

Artisans does not claim that it itself designated that information as confidential, so there is no way by which 19 U.S.C. § 1677f could come into play with regard to the mere identity of Plaintiff as a respondent. Moreover, because, to the extent that Plaintiff made candles covered by the proposed petition, it was required by law to fill out the petition in its entirety, Producer's Questionnaire (Blank), P.R. Doc. No. 1 at 1, public revelation of the fact that the questionnaire had been filled out by Plaintiff could not be considered information subject to either 19 U.S.C. § 1677f or 19 C.F.R. § 201.6(a)(1).

Finally, the document in which Candle Artisans claims that the ITC strongly alludes to its support, see Pl.'s Mot. at 14, consists entirely of a chart listing all domestic candle producers alongside the notation that some producers supported the petition and some did not. See Candles from the People's Republic of China, Determination of the Commission in Investigation No. 731-TA-282 (Final) Under the Tariff Act of 1930, Together with the Information Obtained in the Investigation, USITC Publication 1888, P.R. Doc. No. 3 at A-12-A-14 (Aug. 1986). This information is so general that it cannot be said to reflect at all on Candle Artisans' particular position regarding the petition. Thus, none of Plaintiff's arguments compel a different result from that in Cathedral Candle Co.

**CONCLUSION**

While Plaintiff's claim raises a slightly different argument than was made by plaintiffs in <u>Cathedral Candle Co.</u>, the Court is nonetheless persuaded that the ITC was not required to engage in notice-and-comment rulemaking in order to apply its interpretation of 19 U.S.C. § 1677(f)(b)(1)(A) and 19 C.F.R. § 201.6(a)(1) to hold Plaintiff's indication of support for the underlying antidumping petition confidential.  Therefore, because it cannot be shown that Defendants' dismissal of Plaintiffs' applications as untimely was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, Plaintiff's motion for judgment on the agency record is denied, and judgment is entered for Defendants.


                                     /s/  Donald  C.  Pogue
                                      Donald C. Pogue
                                           Judge

Dated:  New York, New York
        February 7, 2005